# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE
SEARCH OF:
217 SOUTH DENNIS AVENUE
REPUBLIC, MISSOURI


18-SW-30191DPR

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jeffrey Burnett, a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

1. I have been employed as a police officer with the City of Springfield, Missouri, since May 1999. I am currently a TFO with the FBI, as well as a member of the Southwest Missouri Cyber Crimes Task Force. I have been assigned to investigate computer crimes to include violations against children. I have gained expertise in the conduct of such investigations through training in seminars, classes, and every day work related to conducting these types of investigations. I have attended training provided by the FBI Cyber Crime Division, the FBI's Regional Computer Forensic Laboratory, National White Collar Crime Center (NW3C), and the Missouri Internet Crimes Against Children (ICAC) Task Force. I have written, executed, and assisted in over 300 search warrants on the state and federal level.

2. As a TFO, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited

purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252(a), and 2252A are currently located at 217 South Dennis Avenue, Republic, Missouri, which is located in the Western District of Missouri.

3. I make this affidavit in support of an application for a search warrant for evidence, fruits, and instrumentalities of the forgoing criminal violations, which relate to the knowing possession, receipt, and production of child pornography. The property to be searched is described in the following paragraphs and in Attachment A. I request authority to search and/or examine the seized items, specified in Attachment B, as instrumentalities, fruits, and evidence of crime.

4. I have probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, involving the use of a computer in or affecting interstate commerce to receive, possess, and produce child pornography, is located in and within the aforementioned property described below. Thus, as outlined below, and based on my training and experience, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the aforementioned crimes are located on this property.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, Sections 2251, 2252, and 2252A, relating to material involving the sexual

2

exploitation of minors:

 a. 18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading, inducing, enticing or coercing a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce, or if such visual depiction actually was transported in or affecting interstate commerce.

 b. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

 c. 18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any

means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

**<u>DEFINITIONS</u>**

6. The following definitions apply to this Affidavit and its Attachments:

    a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

    b. The term "sexually explicit conduct," pursuant to 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

    c. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

    d. The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage

4

functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

f. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited

5

to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

g. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

h. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

i. "Domain names" are common, easy to remember names associated

6

        with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

   j.   "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

7. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

8. Computers basically serve five functions in connection with child pornography: production, communication, distribution, storage, and social networking.

9. With digital cameras, images of child pornography can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

10. The computer's ability to store images in digital form makes the computer itself an

7

ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11. The Internet affords individuals several different venues for meeting one another, obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

12. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client

software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive

depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

**BIT TORRENT PEER TO PEER (P2P) FILESHARING NETWORK**

14. Peer to Peer (P2P) file sharing allows people using P2P software to download and share files with other P2P users using the same or compatible P2P software. P2P software is readily available on the Internet and often free to download. Internet connected devices such as computers, tablets, and smartphones running P2P software form a P2P network that allow users on the network to share digital files. BitTorrent is one of many P2P networks. For a user to become part of the BitTorrent network, the user must first obtain BitTorrent software and install it on a device. When the BitTorrent software is running and the device is connected to the Internet, the user will be able to download files from other users on the network and share files from their device with other BitTorrent users.

15. Users of the BitTorrent network wishing to share new content will use a BitTorrent program to create a "torrent" file for the file or group of files they wish to share. A torrent file is a small file that contains information about the file(s) and provides a method for a user to download the file(s) referenced in the torrent from other BitTorrent users. Torrent files are typically found as the result of keyword searches on Internet sites that host or link to them. Torrent files may be referenced by their "infohash," which uniquely identifies the torrent based on the file(s) associated with the torrent file.

16. To download file(s) from other users on the BitTorrent network, a user typically

10

obtains a torrent file. The BitTorrent software processes the information in the torrent file and locates devices on the BitTorrent network sharing all or parts or the actual file(s) being sought. The download of the content referenced in the torrent is achieved after the requesting computer and the sharing computer(s) directly connect to each other through the Internet using the BitTorrent software.

## CELLULAR PHONES AND CHILD PORNOGRAPHY

17. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, cellular phones have likewise revolutionized the manner in which child pornography is produced and distributed.

18. Cellular phones ("cell phones") are exceptionally widespread. The Central Intelligence Agency estimates that in 2009 there were 286 million cell phone subscribers in the United States. Cell phones increasingly offer features such as integrated digital cameras, the ability to store hundreds of digital images and the ability to access and browse the internet.

19. In my training and experience, the ready availability and personal nature of cell phones has led to their frequent use in the commission of child pornography offenses. Individuals with a sexual interest in children will often use their cell phone to browse the Internet and to distribute, receive, and store child pornography files. Individuals producing child pornography will also frequently use the integrated digital camera within a cell phone to produce the images, and

11

then store the images both on the phone and on other devices – such as computers and computer storage media.

20. Cell phones, like other computer systems, will frequently retain data relating to activities, such as Internet browsing history, digital images, and other digital data, that can remain stored for a long period of time.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND CELLULAR PHONES**

21. Searches and seizures of evidence from computers and cell phones commonly require agents to download or copy information from the devices and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

    a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish fully on-site.

b. Searching computer systems and cell phones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

22. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

23. Furthermore, because there is probable cause to believe that the computer, its

13

storage devices and cell phones are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

### BACKGROUND OF THE INVESTIGATION

24. On February 10, 2018, TFO James Smith with the Southwest Missouri Cyber Crimes Task Force was conducting an online investigation on the BitTorrent network for offenders sharing child pornography. TFO Smith directed his investigative focus to a device at IP address 107.129.78.126, because it was associated with a torrent with the infohash: 3b3008bf76381fe11a305d0dc09caf4dff461fda. The torrent file referenced at least one file that was identified as a file of investigative interest to child pornography investigations.

25. Using a computer running investigative BitTorrent software, a direct connection was made to the device at IP address 107.129.78.126, hereinafter referred to as "Suspect Device."

26. On February 10, 2018, between 8:59 a.m. and 8:59 a.m., CST, two files were successfully downloaded from the Suspect Device. The Suspect Device was the sole candidate for each download, and, as such, each file was downloaded directly from the Suspect Device.

27. I and TFO Smith reviewed the downloaded files. The files are described as follows:

a. Filename "((Pthc) Tara Brand New.AVI))" depicts an adult white male having anal and oral sexual intercourse with a prepubescent white female, approximately eight years old.

b. Filename "((pthc pedo).....GGG))" depicts a white female juvenile, approximately 10 to 11 years of age, showering. After the shower, the female begins masturbating. An adult male enters and places his penis in her mouth. Later in the video, the juvenile engages in sexual relations with another female, who appears to be approximately 14 to 15 years old.

28. On February 10, 2018, between 6:01 p.m., and 6:33 p.m., CST, TFO Smith downloaded additional files from the Suspect Device. Again, the Suspect Device was the sole candidate for each download, and as such, each file was downloaded directly from this IP Address.

29. I and TFO Smith reviewed the files. The files are described as follows:

a. Filename "(boy17.mpg)" depicts an adult female performing oral sex on a boy that appears to be 3 to 5 years old.

b. Filename "(boy18.mpg)" depicts a nude prepubescent male on a bed performing oral sex upon another prepubescent boy.

c. Filename "(girl02.avi)" depicts a prepubescent girl, approximately 6 to 8 years old, performing oral sex upon an adult male.

30. On February 16, 2018, a query was made on the IP address 107.129.78.126 through the American Registry for Internet Numbers (ARIN). ARIN reported IP address 107.129.78.126 is registered to AT&T Internet Services.

31. TFO Smith obtained and served an investigative subpoena to AT&T Internet Services for records on the above-listed IP address for the dates and times that the files described above were downloaded. AT&T reported that the IP address was

15

assigned to Jonathan Sawyer, with a service and billing address of 217 South Dennis Avenue, Republic, Missouri.

32. On March 23, 2018, I conducted limited surveillance at the residence. A green, older model, Ford Explorer, bearing Missouri license plate UJ8-M5H was parked on the driveway. According to the Missouri Department of Revenue, that vehicle was registered to Jonathan and Amanda Sawyer, with an address of 1600 Windmill Way, B10, Republic, Missouri. The vehicle was described as a 2000 Ford Utility vehicle.

33. Utilizing police resources, I determined that Jonathan Sawyer was associated with the residence 217 South Dennis Avenue, Republic, Missouri, and had ownership of the property since October 18, 2017. The information indicated Jonathan Sawyer possibly lives with his wife, Amanda, at the residence. Jonathan Sawyer reportedly had a previous address of 1600 Windmill Way, B10, Republic, Missouri.

**PROBABLE CAUSE**

34. Based upon the above facts, I believe that probable cause exists for the issuance of a warrant to search the premises described in Attachment A for: (1) property that constitutes evidence of the commission of a criminal offense; (2) contraband, the fruits of a crime, or things otherwise criminally possessed; and/or (3) property designated or intended for use or which is or has been used as the means of committing a criminal offense, namely possible violations of Title 18, United

16

States Code, Sections 2251, 2252, and 2252A, including but not limited to the items listed in Attachment B.

_____
Jeffrey Burnett
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn before me this 4th day of April, 2018.

_____
David P. Rush
United States Magistrate Judge
Western District of Missouri